IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONTAY MURRAY, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 04 C 2252 |
| v. | ) |
| | ) Judge Mark Filip |
| LARRY SIMS, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM OPINION AND ORDER DISMISSING
PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Dontay Murray ("Petitioner" or "Murray"), has filed a petition for writ of habeas corpus ("Petition") against Respondent, Larry Sims, Warden of the Logan Correctional Center in Lincoln, Illinois. Murray challenges the constitutionality of the state court judgment under which he is being held. For the reasons stated below, the Petition is respectfully denied.

BACKGROUND

Petitioner is imprisoned pursuant to a judgment of the Illinois courts. That judgment followed a jury trial in which Petitioner was convicted of first-degree murder and armed robbery, for which he was sentenced to twenty-eight years' imprisonment. (D.E. 10, Ex. B at 1.)[1]

On August 11, 1997, Petitioner and Masteal "Solo" Harris ("Harris" or "Solo") went to Susie Dixon's ("Dixon") apartment at 2001 South Michigan Avenue in Chicago—ostensibly, at least, to purchase cocaine from Archie Grant ("Grant"). (*Id.* at 1, 3.) Petitioner had accompanied

---

[1] The Court has taken the facts from the Illinois appellate court's resolution of Petitioner's direct and post-conviction appeals. *See, e.g., Ashford v. Gilmore,* 167 F.3d 1130, 1131 (7th Cir. 1999) (citing 28 U.S.C. § 2254(e)(1)). Docket entries are designated as "D.E. ___," followed by the appropriate district court docket number.

Harris during several other drug transactions in the past as a "back-up" and to count the money. (*Id.* at 5.) When Grant requested $28,000 for the cocaine, Harris pointed a gun at Grant's head and demanded that Grant give him "the shit," *i.e.*, the cocaine. (*Id.* at 4.) Grant responded by saying, "I knew it. I knew it." (*Id.*) Grant and Harris struggled over the gun and the gun went off, with the bullet striking Grant in the head. (*Id.*) Harris and Petitioner fled the scene, with Harris asking Petitioner if he had the drugs. (*Id.*) Grant later died from medical trauma and complications caused by the gunshot wound to his head. (*Id.* at 2.)

When Officer Tim Moriarty arrived at the crime scene, Grant, who was lying on the floor and bleeding, told him, "Solo shot me, Solo shot me, and his buddy robbed me." (*Id.* at 3.) Moriarty asked Grant several questions about the incident; Grant told him that Solo's friend (later identified as Petitioner) stole $500 from him, and he gave physical descriptions that matched those of Harris and Petitioner. (*Id.*)

Petitioner was arrested for the shooting and was interviewed first by Chicago Police Detective Jim O'Brien and then by a Cook County Assistant State's Attorney. (*Id.*) In a written statement, Petitioner admitted that he had gone, armed with a 9 mm semi-automatic weapon, with Harris to purchase cocaine; he claimed that Grant was shot when Grant struggled with Harris. (*Id.* at 4.) Petitioner stated that he was there to back up Harris and that he knew Harris was going to get drugs. (*Id.* at 3-4.) Finally, Petitioner indicated that Grant's nephew, who is known as "Smootie," thereafter wanted payment of drugs because of the shooting of his uncle; two days after the shooting, Harris gave "Smootie" four-and-one-half ounces of cocaine as compensation for shooting Grant. (*Id.* at 4.)

Harris and Petitioner were subsequently tried for armed robbery and first-degree murder

in front of a double jury. (*Id.* at 1.) At trial, Tieshia Brown ("Brown"), who lived next door to Dixon, testified that she heard a loud popping sound, followed by a male voice that said, "Call 911" and, "Solo shot me." (*Id.* at 2.) Brown also testified that when she looked in the hallway, she saw two men. (*Id.*) The taller of the two men asked the shorter man, "Do you got the shit? Do you got the shit?" and the shorter man replied, "Yeah, yeah." (*Id.*) When the shorter man turned and saw Dixon, he took a step toward her, and Dixon ran back into her apartment and hid in a closet with her nephew until police arrived. (*Id.*) Dixon later identified Harris as the shorter man who turned toward her in the hallway. (*Id.*)

Petitioner took the stand in his own defense. (*Id.* at 4.) On direct examination, Petitioner testified that he went with Harris to purchase drugs and that he, armed with the 9 mm semi-automatic weapon, accompanied Harris to make sure that everything would "go right." (*Id.*) He further testified that, as he was returning to the living room from the bathroom, he saw Harris and Grant "tussle" for Harris's gun, and that Grant was shot when the gun discharged during the ensuing "tussle." (*Id.*)

Petitioner's jury was instructed on accountability and murder, including felony murder. (*Id.* at 5.) The jury found Petitioner guilty of armed robbery and first-degree murder. (*Id.*) Harris's trial ended in a hung jury; he ultimately pleaded guilty and was sentenced to thirty-two years imprisonment. (*Id.*, Ex. A at 21 n.3.)

On direct appeal, Petitioner raised three claims: (1) his trial counsel was ineffective for eliciting a purported judicial confession (*id.*, Ex. B at 5); (2) his trial counsel was ineffective for failing to request a jury instruction on involuntary manslaughter (*id.*); and (3) the trial court erred by admitting Grant's statements to Officer Moriarty as excited utterances. (*Id.* at 12.) The appellate court declined to reach the merits of the ineffective assistance/jury-instruction claim

3

because it was not properly raised within the context of a direct appeal, as its analysis required an examination of issues and materials outside the record. (*Id.* at 11-12.) The Illinois appellate court explained that, under Illinois law, the defendant ultimately must decide whether to request a lesser-included-offense instruction and the record did not indicate whether trial counsel, as opposed to Petitioner, decided not to request the instruction. (*Id.* at 11.) The Illinois appellate court stated, "[o]n direct appeal, this court's review is limited to matters contained in the trial record. Defendant's claim of ineffectiveness is based on matters outside the record and, therefore, is not properly before us on direct appeal." (*Id.* at 12 (internal citations omitted).) Petitioner's two other claims were rejected on the merits. (*Id.* at 9, 14.)

Petitioner presented his ineffective assistance/jury-instruction claim in his petition for leave to appeal to the Illinois Supreme Court (*id.*, Ex. C at 12), a discretionary level of review within the Illinois appellate system. The Illinois Supreme Court declined to hear the case and summarily dismissed the petition. (*Id.*, Ex. D.)

On February 19, 2003, Petitioner filed a petition for post-conviction relief in the Circuit Court of Cook County; this petition presented his ineffective assistance/jury-instruction claim. (*Id.*, Ex. E at 11.) The circuit court denied the petition as frivolous and without merit on May 23, 2003. (*Id.*, Ex. F at 9.) Petitioner did not timely appeal and his request for leave to file a late notice of appeal was denied. (*Id.*)

On February 5, 2004, Petitioner filed the instant petition. (D.E. 1.) Attached to the petition was an affidavit from Petitioner stating that his trial attorney never discussed the option of an involuntary-manslaughter instruction and that he would have requested the instruction if he would have known that it was available. (*Id.* at 9.)

4

I.     Standard of Review

The grounds upon which a federal district court may issue a writ of habeas corpus for a person imprisoned pursuant to a state court criminal judgment are subject to meaningful limits. First, habeas relief can be granted "only on the ground that [a prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court cannot grant habeas relief on the grounds that a state court incorrectly applied state law, except to the extent that such application also violated federal law.

Second, the Court may not provide habeas relief unless Petitioner has exhausted all available remedies in state courts. *See, e.g., Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998) (teaching that a petitioner must exhaust "all available state remedies," and that if he does not, "the petition is barred") (internal quotation marks and citation omitted).[2] Precedent teaches that the exhaustion requirement serves multiple purposes: it promotes comity between state and federal courts, and it promotes the development of an appropriate record, which assists federal courts when they review habeas claims. *See, e.g., Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (explaining that the exhaustion requirement is grounded in principles of federalism and comity between state and federal courts);

---

[2] *Accord, e.g., Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9-10 (1992) ("The Court has long held that state prisoners must exhaust state remedies before obtaining federal habeas relief. *Ex parte Royall*, 117 U.S. 241 (1886). The requirement that state prisoners exhaust state remedies before a writ of habeas corpus is granted by a federal court is now incorporated into the federal habeas statute. 28 U.S.C. § 2254. Exhaustion means more than notice. In requiring exhaustion of a federal claim in state court, Congress surely meant that exhaustion be serious and meaningful.") (footnote omitted); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("The Supreme Court held in [*O'Sullivan v.*] *Boerckel* that to 'exhaust' state judicial remedies, for purposes of 28 U.S.C. § 2254(b)(1), a prisoner must use all available avenues of review.") (citing *Boerckel*, 526 U.S. 838 (1999)); 28 U.S.C. § 2254(b) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . .").

*Ward v. Hinsley*, 377 F.3d 719, 726 (7th Cir. 2004) (same, and further emphasizing that "State courts have 'initial responsibility for vindicating constitutional rights' in state criminal trials") (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)).

Exhausting available state remedies includes fairly and properly presenting each claim on appeal to the Illinois appellate court and in a petition to the Illinois Supreme Court. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003). This rule applies to claims presented in petitions for state post-conviction relief, as well as to claims contained in direct appeals from criminal courts. *See, e.g., White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (*per curiam*).

For the exhaustion doctrine "to prevent unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution, it is not sufficient merely that the federal habeas applicant has been through the state courts. [. . . .] Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Perruquet*, 390 F.3d at 513 (internal quotation marks and citation omitted). It is insufficient to merely state a federal claim in state court: instead, "the petitioner [must] afford the State a full and fair opportunity to address and resolve the claim on the merits." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Full and fair presentment does not occur if the petitioner fails to follow the rules the state has established for the appeal process. *See generally Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (explaining that "a prisoner must use all available avenues of review," and comparing exhaustion requirements for administrative remedies and criminal appeals). This includes raising claims in the proper forum. *See Castille*, 489 U.S. at 351 (holding that a petitioner does not exhaust available state remedies when he merely raises a claim in a proceeding during which the merits

of a claim are not considered except when special or important reasons are present); *accord, e.g., Tamayo-Reyes*, 504 U.S. at 10 (variously explaining that exhaustion of claims in state court must "be serious and meaningful," with state courts having "a full and fair opportunity to address and resolve the claim on the merits" in an "appropriate forum"); *Kurzawa*, 146 F.3d at 440 (teaching that a petitioner must exhaust "all available state remedies," and that if he does not, "the petition is barred") (internal quotation marks and citation omitted).

Third, habeas relief is ordinarily not available for claims that have been "procedurally defaulted" in state proceedings. A claim may be procedurally defaulted because a state court has already determined that is barred under state procedural law. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In addition, even when a state court has not issued a procedural ruling on the claim, a claim may be procedurally defaulted if the court reviewing the habeas petition determines that "the [state] court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.*, 501 U.S. at 735 n.1.

The Court may excuse procedural default when there is cause for the default and prejudice as a result of the alleged violation of federal law or where a refusal to consider the claim would result in a fundamental miscarriage of justice. *See Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). To show cause for a default, Petitioner must offer an "external" excuse—one that cannot fairly be attributed to him. *See, e.g., Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003); *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990) (collecting Seventh Circuit precedents). In order to establish prejudice, a petitioner must demonstrate that the alleged constitutional violation establishes a reasonable likelihood "that the result of the trial would have been different" in the absence of the violation. *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir.

2005) (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999)); *id.* at 803 (similar).

In order to establish that a fundamental miscarriage of justice has occurred, Petitioner must demonstrate by clear and convincing evidence that, but for the alleged violation of federal law in the state court proceedings, no reasonable juror would have convicted him. *Dellinger*, 301 F.3d at 767 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In other words, the exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Id.* An error that increases the punishment for a non-capital offense, such as a sentencing error, does not constitute a "fundamental miscarriage of justice." *See Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997). Due to the prior finding of guilt by the factfinder, a petitioner alleging a fundamental miscarriage of justice bears the burden of proof. *See Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003).

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), placed additional restrictions on federal habeas relief for persons imprisoned pursuant to the judgment of a state court. Under the AEDPA, the state court judgment must violate federal law and it must either be "contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or be "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.§ 2254(d). A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided a case with "materially indistinguishable facts" differently from the Court. *Huynh v. Bowen*, 374 F.3d 546, 548 (7th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision is an "unreasonable application of" clearly established law "'if the state court identifies the correct governing legal principle from the [Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Cossel v. Miller*, 229 F.3d 649, 654 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 413).

II. Issues Raised in the Petition

Petitioner seeks habeas relief on the grounds that he received ineffective assistance of counsel when his attorney did not request a jury instruction on the lesser-included offense of involuntary manslaughter. (D.E. 1 at 5a.) The Court respectfully denies habeas relief because the claim has been procedurally defaulted. Petitioner did not appropriately and fairly present this claim for a full round of appellate review, as he must, and he does not suggest that Illinois law would permit him to raise this claim in a successive petition.

Petitioner argues that he fully and fairly presented his ineffective assistance/jury-instruction claim when he raised it on direct appeal and in his petition for leave to appeal to the Illinois Supreme Court (D.E. 11 at 1), notwithstanding that Illinois law, like federal law, prescribes that the matter is appropriately raised in the context of a post-conviction motion because it requires analysis of matters outside the record. *See* D.E. 10, Ex. B at 12 (collecting Illinois appellate precedents); *see also, e.g., United States v. Banks*, 405 F.3d 559, 567 (7th Cir. 2005) ("We have repeatedly stated that extrinsic evidence may not properly be introduced in connection with an ineffective assistance claim on direct appeal"); *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991) ("[T]he defendant can in his direct appeal . . . ask the court of appeals to hold that the unadorned trial record demonstrates that he was denied his right to effective assistance of counsel; such a challenge is necessarily limited to the trial record, since a court of appeals does not take evidence.") (citations omitted)). Petitioner "presented" the claim on direct appeal only in the inadequate sense that he "presented" it in contravention of well-settled state law; that is not exhaustion of "all available state remedies" provided by state law,

because Petitioner did not present the claim for a full round of review within the appropriate context of a post-trial motion and related appeals. *Kurzawa*, 146 F.3d at 440; *accord, e.g.*, *Tamayo-Reyes*, 504 U.S. at 10 (exhaustion of claims in state court must "be serious and meaningful," with state courts having "a full and fair opportunity to address and resolve the claim on the merits" in an "appropriate forum"); *Pozo*, 286 F.3d at 1024. Petitioner's interpretation of the exhaustion requirement would improperly require state appellate courts either to fundamentally alter the widespread and commonsense approach of not having them function as assemblers of the factual record (*i.e.*, concerning factual matters outside the record that must be addressed to fairly adjudicate many ineffective assistance claims), or abdicate their central place in the vindication of federal rights in state criminal cases. *See, e.g., Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004) (rejecting petitioner's interpretation of exhaustion requirement for habeas corpus purposes because it would impose a serious burden on state appellate courts and force them to alter their ordinary practices of judicial review). The rule that a petitioner would be deemed to have fully and fairly presented a claim by "presenting" it first to an appellate court that does not, under settled Illinois precedent, properly address the claim on the merits in the first instance works against both rationales for exhaustion. It undermines comity by reducing state-court review of federal claims and it brings more claims to federal court with an undeveloped factual record. *See Tamayo-Reyes*, 504 U.S. at 10; *Perruquet*, 390 F.3d at 513. In this regard, the Court notes that, to the extent it is relevant, the Illinois rule concerning ineffective assistance claims which rely on or relate to matters outside the record is not an anomalous or inexplicable one; it appears to mirror the approach used in, for example, the federal courts, and it rests on consensus views about the respective institutional responsibilities of trial courts and appellate courts to assemble factual records.

Of course, Petitioner filed a post-conviction petition that concerned the ineffective assistance/jury instruction issue. The Court will assume that Petitioner properly presented this claim in the petition for post-conviction relief.[3] That petition was denied, though, by the Circuit Court of Cook County as "frivolous and without merit." (D.E. 10, Ex. F. at 9.) Thereafter, Petitioner did not file a timely appeal; his motion for leave to file a late appeal was denied; and he did not file a petition for leave to appeal to the Illinois Supreme Court. (D.E. 9 at 10; D.E. 10, Ex. F at 9.) Thus, his claim was not exhausted because it was not presented for a full round of post-conviction review. *See, e.g., White*, 192 F.3d at 608.[4] This claim is now procedurally defaulted because Murray can no longer present the claim for a full round of review—the Illinois courts have already determined that Murray untimely filed his notice of appeal (*see* D.E. 10, Ex. F at 9) and Murray does not suggest that he has ever attempted to raise, nor that Illinois would permit him to raise, the claim in a successive post-conviction petition. *See generally, e.g., People v. Morgan*, 817 N.E.2d 524, 527 (Ill. App. Ct. 2004) ("[T]he [Illinois] Post-Conviction Hearing Act contemplates the filing of only one postconviction petition," absent a showing that fundamental fairness requires a successive petition and a showing of cause in the form of a factor external to the defense and actual prejudice) (internal citations omitted); *People v. Ross*, 818 N.E.2d 738, 741 (Ill. App. Ct. 2004) (discussing sixth-month limitation period after the appellate

---

[3] The State argues that the post-conviction petition was defective under Illinois law because "petitioner failed to . . . comply with the state court rule that post-conviction claims must be supported by [a sufficient] affidavit or other documentation." (D.E. 9 at 10 n.3 (citing Illinois authorities).) Given that Petitioner did not exhaust the claim through a full round of Illinois review, even if it was properly presented in the first instance in the trial court via the post-trial petition with the allegedly inadequate evidentiary support, the Court need not pass on this argument.

[4] Petitioner also does not contend, nor does the record suggest, that he filed any request with the Illinois Supreme Court for an order directing the Illinois Court of Appeals to accept the belated appeal. (D.E. 10, Ex. F.)

11

court enters judgment).

Petitioner claims that his appeal was filed late because he thought that the Office of the Public Defender, which had represented him in the initial post-conviction proceeding, would file a timely notice of appeal. (D.E. 11 at 1.) Petitioner does not maintain that his attorney made any representations to that effect; he places the blame on his "not being knowledgeable about the law." (*Id.*) Petitioner's unfamiliarity with the law or the legal system does not excuse default because it is not a reason "external" to him. *See, e.g., Harris*, 334 F.3d at 669 (rejecting the idea that a habeas petitioner's *pro se* status constitutes adequate grounds for cause, and further joining with other circuit court precedent in holding that a petitioner's borderline mental retardation does not constitute cause because it is not "external" to the defense); *Henderson*, 919 F.2d at 1272 (*pro se* status of petitioner is not a basis for cause). In addition, and independently, precedent teaches that a "claim of ineffective assistance must be raised in state court before it can suffice on federal habeas relief as 'cause' to excuse the default of another claim (even if that other claim is also ineffective assistance of counsel)." *Dellinger*, 301 F.3d at 766-67 (citing *Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000)). Furthermore, and independently, the Seventh Circuit has held that, "[i]neffective assistance of *postconviction* counsel is not itself a cognizable federal constitutional violation and may not serve as cause for a procedural default." *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996) (collecting numerous cases; emphasis added).

In addition, and again independently, Petitioner cannot demonstrate the requisite prejudice because he has not met his burden of showing that there is a reasonable likelihood that the outcome at trial would have been different if he received the involuntary-manslaughter instruction. *See Richardson*, 401 F.3d at 801 (quoting *Strickler*, 527 U.S. at 289); *id.* at 803. Petitioner's jury was instructed on accountability and felony murder. (D.E. 10, Ex. B at 5.) The

12

jury also was instructed and found Petitioner guilty of armed robbery. (*Id.*, Ex. B at 1.) Given the conviction for armed robbery, it appears most likely that Petitioner was convicted of murder under felony-murder fundamentals of Illinois law. Put differently, even if a jury had determined that neither Harris nor Petitioner intended to kill Grant, given Petitioner's conviction for armed robbery, it would have held Petitioner liable for Grant's death under the felony-murder rule.

Illinois law recognizes three "theories" of first-degree murder: (1) intentionally causing death or great bodily harm; (2) knowingly causing of a strong probability of death or great bodily harm; and (3) felony murder. 720 ILCS 5/9-1. Involuntary manslaughter is a lesser-included offense of theories (1) and (2); however, it is not a lesser-included offense of felony murder because no independent mental state is necessary to prove felony murder once the State proves the requisite mental state for the underlying forcible felony. *See, e.g., People v. Sandy*, 544 N.E.2d 1248, 1254 (Ill. App. Ct. 1989) (collecting cases).

Illinois's felony-murder provision provides that "a person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death . . . he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9-1(a)(3). The Illinois Supreme Court has determined that this provision codified the "proximate cause theory" of felony murder, meaning that "liability attaches under the felony-murder rule for any death proximately resulting from the unlawful activity," irrespective, for example, of whether the defendant did the killing or it was directly precipitated by a putative victim or bystander attempting to resist the crime. *See, e.g., People v. Lowery*, 687 N.E.2d 973, 975-76 (Ill. 1997). As a result, the State does not have to prove beyond a reasonable doubt that the Defendant personally killed the victim; it merely needs to prove that the death was a "direct and foreseeable consequence" of committing the felony. *See, e.g., id.* at 976 (collecting cases);

*accord id.* ("[T]here is no reason why the principle underlying the doctrine of proximate cause should not apply to criminal cases. Moreover, we believe that the intent behind the felony-murder doctrine would be thwarted if we did not apply the rule in this context.").

The jury convicted Petitioner of armed robbery (D.E., Ex. B at 1), which is defined by Illinois law as a forcible felony. 720 ILCS 5/2-8. Furthermore, it is well-established under Illinois law that a shooting death is a direct and foreseeable consequence of committing armed robbery. *See, e.g., Lowery*, 687 N.E.2d at 975-76; *People v. Allen*, 309 N.E.2d 544, 548-49 (Ill. 1974); *People v. Payne*, 194 N.E. 539, 543 (Ill. 1935). Thus, a jury instruction on involuntary manslaughter would not have precluded Petitioner from being convicted of first-degree murder on a felony-murder theory. *See Sandy*, 544 N.E.2d at 1254; *People v. Weathers*, 309 N.E.2d 795, 801 (Ill. App. Ct. 1974) ("It follows, then, that it would be impossible for one committing a homicide during the course of a forcible felony to be guilty of manslaughter. In the present case the defendant admitted participation in a planned armed robbery. Therefore, it would have been impossible for the jury to have found him guilty of manslaughter or reckless conduct, and any conjecture as to the precise circumstances under which the gun was discharged is immaterial.").

Finally, Petitioner does not argue, nor does the record suggest, that Petitioner could establish that failure to excuse his default would result in a fundamental miscarriage of justice. First, *Schlup v. Delo*, 513 U.S. 298 (1995), teaches that, "[t]o be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence." *Id.* at 324. *Delo* further instructed that, "[b]ecause such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful . . . [and] in virtually every case, the allegation of actual innocence has been

summarily rejected." *Id.* (internal quotation marks and citation omitted). The requisite probability is established by showing that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence. *Id.* at 327. Petitioner has not set forth any new evidence nor does he even argue that he qualifies for the "actual innocence"/ fundamental miscarriage of justice exception.[5]

Furthermore, and independently, even if the Court accepted Petitioner's substantive claims *arguendo*, Petitioner is only arguing that he might have been able to convince the jury to convict him on a lesser-included offense. Petitioner cannot be excused because he does not claim nor does he provide clear and convincing evidence that he was actually innocent of armed robbery or first-degree felony murder. *See Dellinger*, 301 F.3d at 767. To the contrary, as discussed previously, the facts were sufficient to convict Petitioner of first-degree felony murder and armed robbery under settled Illinois law.

Finally, Petitioner's argument more closely resembles a sentencing challenge than an actual innocence claim; the Seventh Circuit has already determined that a non-capital sentencing error does not excuse procedural default. *See Hope*, 108 F.3d at 120 (construing 28 U.S.C. § 2255 and stating that same logic applies to § 2254). For all of these largely independent reasons, Petitioner gets no relief from the actual innocence exception.

---

[5] The Court notes that Petitioner never has attempted to raise any claim under *Jackson v. Virginia*, 443 U.S. 307 (1979)—not in this Court, and seemingly not in any court at any stage of his efforts to vacate the jury's verdict and the sentence for armed robbery and first-degree murder.

15

## CONCLUSION

For the reasons stated above, federal habeas relief is not warranted. Consequently, the Petition is respectfully denied.

So Ordered.

                                                          _____
                                                          Mark Filip
                                                          United States District Judge
                                                          Northern District of Illinois

Date:   January 17, 2006